Devin McLaughlin for Defendant Appellant Henry Dean, we've raised two arguments in terms of his sentence. I might just raise that just a little bit or get closer, sorry. We've raised two arguments, Your Honors, in terms of Mr. Dean's sentence, procedural reasonableness and substantive reasonableness. In terms of procedural reasonableness, one thing that can't be disputed is that there was a lot of conduct, unproven, uncharged conduct put into the record by the government in this case in terms of asserting that Mr. Dean had ripped off his siblings, ripped off his mom, ripped off Key West scooter users, ripped off $100,000 from an individual, ripped off his landlord. All those things were in the record. They shouldn't have been in the record in terms of being presented because there's no evidence to support them. Three times. Three times. Right. District Judge said, three times, I'm not going to consider that. So why would we send it back to have her say for the fourth time that she's not going to consider that? Because from our perspective, Your Honor, she ended up splitting the baby on that. She said, I'm not going to consider the substance of those charges because I don't have the evidence in front of me. But what I am going to consider is the fact that those complaints were made to the prosecutor, including by his siblings. And the question to the court is, what is the relevance of that? If she had simply said, and I agree, I'm not considering that three times, I wouldn't even be able to make the argument. What she did end up saying, though, unfortunately, for the government, from our perspective, is what I am going to consider is the fact that these complaints were made. And what is there about these complaints that has any relevance to the proceeding? Well, it can only be because they're complaining of fraud, the ripping off. And that is the key central aspect of what she was going to go ahead and sentence Mr. Dean for. So... It could be that he put in letters saying that he's a good guy and the fact that other people don't agree, it wasn't unanimous that, you know, the details of the fraud are one thing, but just the fact that there's disagreement over how good a guy he is, right? And so, if it was just, he's a bad guy, you know, he's... Not necessarily a bad guy, but not everybody agrees that he's a good guy. I don't know, I mean, that's... And that was an argument that the government has made on appeal, that that is simply refuting the nice letters in support of him as being the good guy. The problem, though, is that these assertions are, he's a bad guy because he's committing frauds. It's not he's a bad guy because he doesn't come to our family reunions or something like that. He's a bad guy because he's committing frauds. That's the, we submit, the necessary inference behind that. Is it not relevant that many people were complaining about that? Even without regard to whether it was done, I mean, is it relevant that many people coming forward to the government and saying he ripped us off, too? Our position is that it can't be relevant absent being proven, Your Honor. I mean, the fact that a bunch of people are saying, rip me off, rip me off, rip me off, committed fraud, committed fraud, committed fraud, absent a finding that he actually did, Your Honor, it's our position that no, it's not relevant. It's simply unproven. It's the same thing as saying he's been charged 15 other times. So therefore, when am I going to take from that? Sentencing phase. We look at other arrests. It's in the PSR. Correct. Correct. In other words, it's relevant whether there are other arrests, other charges, and may not be dispositive, but it's part of the mix of information that goes into a sentencing. Right. And our position, Your Honor, on that is that you can't put the complaints into the calculation without crediting them. That's our argument on that, Your Honor. The other procedural argument that we've made has to do with the quantum of harm and the emotional harm. And obviously, a lot of the sentencing was focused on emotional harm, ranging from the victims presenting to the court and the victim impact statements, et cetera. Our position is that there was a procedural end run around the guidelines on that because there's no doubt that there was emotional harm suffered by and trauma suffered by folks who had to go through what happened here. But the guidelines specifically indicate that in cases of fraud, we're not going to consider emotional harm unless, A, it is the intention of the fraud or objective of the fraud, or B, it rises to the level of creating a risk of severe emotional trauma. The judge could still consider it as a variance outside the guidelines. She didn't say she was doing it under the guidelines. She could decide whatever the guidelines say, she thinks, in this case, it was something to be considered, something that was important, right? Which then goes to, Your Honor, I mean, that segues to the substantive reasonableness of the sentence because I agree with you that she used it primarily in the context of- Let me ask you this. In the guideline range here, is there any reflection of who the victims are, the impact that they suffered? There is no, the guideline doesn't reflect that, right? The guideline reflects dollars and numbers. Right. So, if this was an insurance company who was being defrauded as opposed to individuals, 23, well, you have to have 10 victims, so it's reflected. But in terms of that these people, it's their family reunion, they had suffered emotional harm, whether it's severe or not, there's plenty of letters talking about a lot of harm, some physical ramifications that resulted from this fraud. So you're saying a judge can't say, look, the guidelines doesn't really take into account who these victims are and the harm that they suffered, so I'm going to do that and I'm going to do that. The judge can't do that? Well, the guidelines indicate, Your Honor, that in order to marginally deviate upwards, we're going to have to have severe emotional harm. So I'm agreeing- Can't a judge say, I don't agree with the guidelines on that? I think I want to consider this under the 3553A factors, the harm that was done to these victims. A judge can certainly do that, right? And then the question becomes, Your Honor, whether it warrants doubling the guideline. So it's- Let me just ask you this. If it was $13,000 more and it had reached 150 instead of, was it 137-ish, right? So $13,000 more would have been 21 to 27, the guidelines would have gone up. So it was very close to the next range in terms of dollar amount. So you're not talking about, you know, the government was acting for five years and she didn't impose the five years. I understand she didn't impose the five. I have a gentleman who's never spent any time in jail is now sitting there for three with a guideline of 15 to 21. And so our position is that she effectively doubled the guideline. And I think the response to Your Honor is, does that emotional harm carry the weight? She also said high risk of recidivism. It wasn't just the emotional harm. She gave a lot of reasons, right? He's a danger. He's an ongoing danger. He thinks he's an entrepreneur. He didn't essentially, he minimized. So it wasn't just the emotional harm, which was significant. Agreed, Your Honor. In terms of looking both at her statement of reasons and at the conclusion where she at the sentencing, where she says, this is why I am varying, two of them we submit are impermissible. Two of them are the impact on the victims and the intent aspect of things. I agree with you, Your Honor, that she also mentions recidivism. So the question then becomes if the other two. Why is the intent aspect, you know, not permissible? Because intent is an inherent element in every fraud crime. And so she spends all of her, I didn't intend to defraud them from the beginning. It just sort of went bad. And she said, no, you got rejected from being allowed to buy this property and you took money in for the following summer for property that you knew you were not going to have. Why can't she say that when you call yourself an entrepreneur and that this turned bad, that you're not taking responsibility? You're saying that's, it's at what point you intended to fraud? Not just the intent to defraud as an element, but what she was saying, he intended to defraud from the very beginning and he won't even admit that. Your Honor, in terms of, and I think carrying that forward, what I hear you saying, and I may well be mishearing you, and I apologize for that, is consistent with how I interpreted what Judge Walford was doing, which is saying, no, really there was bad intent here. Really there was bad intent. From the beginning, as opposed to what your client was saying, which is I had a good motive in the beginning. I just couldn't repair the places and got out of control. And she's saying, no, that's not what happened here. You got rejected from buying the property and took all this money in for people's family reunions, knowing you were not getting that property. And what does that mean? It means he has bad intent. And bad intent is a necessary element of the crime. So... Is it an irrelevant consideration for sentencing? Bad intent, how bad it is? From our perspective, Your Honor, because it's a necessary element of the crime, I'm having... I mean, if it is a necessary element of the crime, why can't the sentencing judge look at how bad the intent was, how evil the intent was? The judge, for example, noted that your client insulted people, threatened to one of the victims go to the husband's job to have the... So it was beyond just taking their money that he was rude and insulting and threatened them when they questioned getting their money. Judge can't consider that? And I'm not arguing they can't consider that. Obviously, the judge encompassed a lot of my client's behavior in the sentencing and in her sentencing decision. I am trying to distill it to the operative pieces. And Your Honor, in response, in terms of intent, I'm struggling with the notion of there is some magnitude of evil at which I could distinguish between kind of normal intent and evil intent. I guess I would say... And looking at the nature of the offense, you look at how bad it is, how culpable the defendant was, whether the defendant is now remorseful. These are all things that are proper considerations. You have three minutes for rebuttal. Let's hear from the government. Appreciate it. Thank you. Good morning. My name is Melissa Marangola. I represent the United States in this case. It's the government's position that the 36-month sentence was both substantively and procedurally reasonable in this case. It was low, in fact. That's my personal opinion. It was rejected by the court. But if there was ever a case where the financial guideline calculation severely undermined or underestimated the severeness of a crime, this is it. As was correctly pointed out by the court, this guideline calculation was approximately $137,000 worth of loss. And it could have gone higher had we calculated the loss to be over $150,000. For clarification, the guideline calculation for the financial loss in this case was calculated simply by the deposits that were paid to Mr. Dean. It doesn't accurately count all of the plane tickets, all of the extended family members who were financially impacted by this case. This was the lowest financial guideline calculation we came up with. And the defendant was afforded that benefit by the low guidelines, 15 to 21 months. The court accurately considered the 3553A factors in this case. The court heard directly from four victims who were emotionally and financially impacted directly by the defendant. And a clear review of the record shows that the defendant did himself no favors by his letter to the court and his statements to the court, which minimized his conduct after the emotional recounts from the victims in court. He simply didn't get it, and the court fairly explained that in her reasoning for the sentence. Let me ask, why would you go into a sentencing and start laying out all this other fraud that was not pled, you know, there was no guilty plea to? You're essentially trying, you're essentially, potentially leading the sentencing judge into error, right? Unless the government was prepared to prove that all these other people who were calling were victims of a fraud, why would the government even throw that out there at sentencing? Well, once in response to his letters of support, as pointed out by Ms. Lee in my office in our brief, but more importantly, we reserved that right in the plea agreement in paragraph 12, appendix 24, it says that both parties can bring to light all relevant information, and I thought that that was relevant, Judge. Wouldn't she have to have a hearing on that? If she had said, okay, I'm going to raise the dollar amount, whatever those people's additional fraud was, that would have been an error, right? If she had listened to what the government was arguing at sentencing and said, okay, these other people are calling, they've been the victims of fraud, I'm going to make the fraud amount $300,000, that would have been an error, right? Well, potentially a sentencing hearing would have been appropriate had she wanted to consider that, but she rejected it. I know, but if the government is offering something like that, they should say, and we're prepared to prove it at a hearing, that's really my point, rather than just throwing it out there, and if the judge accepts it, creating an error. And yes, I would have been prepared to prove that at a hearing, frankly, with the siblings and Mr. Danny Sturtz coming to court. I would note, though, that the defendant actually conceded many of the points I made in his I referenced, as you recall, the hard lender, or the individual he scammed out of his 401k as DS. The defendant actually came and provided his name as Danny Sturtz and tried to provide the court with an explanation that this person was a 401k hard money lender from Orlando, and he actually discussed his communication with his siblings in his own statement to the court. So, to indicate that what the government said was somehow unsubstantiated is a little disingenuous in that the defendant tried to explain it away, and therefore it's my view that he conceded what I said was actually truthful. But be that as it may, the court rejected all of those statements and specifically said three times that she was not going to consider that. She considered his history, the nature of the circumstances of the crime, and a concern that he's going to fall back into criminal conduct upon his release to the community, which is supported by the record when the defendant said, I need to get back to business. I need to continue with this and make money. Her concerns were valid, and the sentence was reasonable, and I would submit low. And without any further questions from the court, I'll rely on my papers. Thank you. Thank you. We'll hear the rebuttal. Thank you, Honors. Just briefly, I wanted to go back to the question of intent and bad intent and what role it may play. And what I want to suggest, Your Honor, is that within sentencing, we have this notion of the heartland and the heartland behavior. And so we know with fraud cases, within the heartland of fraud cases, we have bad intent because we have an intent to go ahead and defraud people. And so the question really isn't whether intent can or can't be considered. The question is whether the intent here rises to the level of something that's going to end up with a variant sentence double what the guidelines say. And so that's, I think, the logical argument in terms of this doesn't qualify as that level of intent. And then, I guess segueing in some way, the government just stood up and said if there was ever a case where an upward variance was warranted, this is the case. And respectfully, Smith, this isn't the case. I mean, we have a lot of, and believe me, this one strikes somewhat close to home in terms of people losing their vacation and extended family and how difficult that may or may not be. But we have all sorts of fraud cases where people are left destitute, they're left having to lose their homes, they're having to lose whatever. And here, we lose dream vacations. And I know that's painful, but respectfully, Smith, this isn't the case that stands out amongst others. So, thank you for your time.